## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Patricia Donithan,

      Plaintiff,                              Case No. 2:21-cv-1136

      v.                                 Judge Michael H. Watson

Ohio Department of Rehabilitation        Magistrate Judge Vascura
& Correction,

      Defendant.

### OPINION AND ORDER

Ohio Department of Rehabilitation and Correction ("Defendant") moves for summary judgment on each of Patricia Donithan's ("Plaintiff") claims of retaliation under the Family and Medical Leave Act ("FMLA"). Mot., ECF Nos. 59, 61.[1] For the following reasons, the Court **GRANTS** Defendant's motion.

### I.    FACTS

Plaintiff worked for Defendant from 1996 until 2021. Donithan Dep. 18:3–9; 41:13–15, ECF No. 55. During the pertinent timeframe, Plaintiff worked as a Records Management Supervisor, Document Management File Retention. Donithan Dep. 38:22–42:7, ECF No. 55. Plaintiff's direct supervisor was Administrative Officer 2 ("Assistant Chief"), Carolyn Young ("Young"). *Id.* at

---

[1] ECF No. 59 was not compliant with the Court's local requirement that documents be submitted in a text-searchable format, *see* Notice, ECF No. 60. Accordingly, a compliant version was resubmitted in ECF No. 61. The Court cites to ECF No. 61 throughout this Opinion and Order.

43:3–7; Bower Dep. 17:10–12, ECF No. 52; Young Dep. 16:8–24, ECF No. 51.

Young's direct supervisor was the Chief of Sentence Computation and Records

Management, Liann Bower ("Bower").  Donithan Dep. at 43:13–16, ECF No. 555;

Bower Dep. 14:4–5, ECF No. 52.

Plaintiff took FMLA leave in 2016, 2017, and 2018 to care for her father.

*Id.* at 63:19–24.  Plaintiff applied for, but was denied, various promotions from

2017 through 2021.  *Id.* at 64:16–65:16.  She believes each promotion denial

was retaliation for taking FMLA leave.  *See generally*, *id.*  Additional facts are

discussed below, as necessary.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of

Civil Procedure 56(a), which provides: "The court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to

make a showing sufficient to establish the existence of an element essential to

that party's case" and "on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v.*

*Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all

reasonable inferences in favor of the nonmoving party, who must set forth

specific facts showing there is a genuine dispute of material fact for trial, and the

Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III.    ANALYSIS

Plaintiff alleges that FMLA retaliation is the reason she failed to obtain five separate promotions: (1) a 2017 promotion to a Correction Record Sentence Computation/Release Supervisor position; (2) a subsequent 2017 promotion to Administrative Officer 2; (3)/(4) two 2018 promotions to Correction Record

Sentence Computation Release Auditor Supervisor; and (5) a 2021 promotion to Release Supervisor.  Resp., ECF No. 67.

## A. Untimely Claims

The first two instances of alleged retaliation involve promotions that were filled in 2017.  *See, e.g.*, Kimbro Decl. ¶¶ 10, 12, ECF No. 61-2; Kimbro Decl., ECF No. 61-3 at PAGEID ## 1345, 1353.

Defendant argues that retaliation claims based on these instances are barred by the statute of limitations.[2]  Mot. Summ. J. 14–15, ECF No. 61.

As the Court noted in a prior Opinion and Order in this case:

> Generally, there is a two-year statute of limitations for all FMLA claims.  29 U.S.C. § 2617(c)(1) ("Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.").  The statute of limitations is extended to three years for willful violations, however.  29 U.S.C. § 2617(c)(2) ("In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.").

Op. and Order 4, ECF No. 35.

Plaintiff's original Complaint was filed on March 16, 2021, which falls outside even the generous three-year statute of limitations.  *See* Compl., ECF

---

[2] Defendant also argues that Plaintiff did not raise claims based on these instances in her Second Amended Complaint, failed to move to amend her complaint after discovery to add these claims, and should therefore be barred from asserting them.  Mot. Summ. J. 14–15, ECF No. 61 ("Because Donithan did not mention either 2017 position in her Second Amended Complaint, this Court should not consider them.").  Because the claims are untimely, the Court need not consider that alternative basis for dismissal.

No. 1. Plaintiff offers no response to Defendant's statute of limitations argument, and the Court finds that any retaliation claim based on a failure to promote that occurred in 2017 is time-barred. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's first two claims.

## B. Timely Claims

The remainder of Plaintiff's claims are arguably timely and should therefore be addressed on the merits.[3]

### 1. FMLA Retaliation

The FMLA states that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2); *see also* 29 C.F.R. § 825.220(c) (stating the FMLA "prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights."). Thus, the FMLA "encompasses a retaliation theory." *Johnson v. Fifth Third Bank*, 685 F. App'x 379, 384 (6th Cir. 2017) (citation omitted).

When, as here, a plaintiff asserts a single-motive FMLA retaliation claim,[4] the Court must determine whether that plaintiff relies on direct evidence or on

---

[3] *See* Op. and Order 4–8, ECF No. 35 (discussing the timeliness of the 2018 claims and declining to find at the motion to dismiss stage that the two-year limitations period applied). Defendant did not address in its summary judgment motion whether the two- or three-year limitations period applied to Plaintiff's claims based on the events in 2018, and the Court therefore does not consider whether those claims are time-barred.

[4] The *Price Waterhouse* and *Desert Palace* principles, as modified in *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) to create a summary judgment standard in mixed-motive Title VII cases, likely apply to a summary judgment analysis of mixed-motive FMLA retaliation claims. However, because Plaintiff never identifies her claim as

circumstantial evidence. This is because one analysis applies for plaintiffs who offer direct evidence of retaliation, while the familiar *McDonnell Douglas/Burdine* tripartite burden-shifting test applies for those who rely on circumstantial evidence. *E.g.*, *Donald v. Sybra, Inc.*, 667 F.3d 757 (6th Cir. 2012) ("There is no doubt that this Court applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation suits when the plaintiff produces indirect evidence of a causal connection between the protected activity and the adverse employment action." (citations omitted)); *Johnson*, 685 F. App'x at 384 (analyzing single-motive FMLA retaliation claim based on circumstantial evidence under *McDonnell Douglas/Burdine*).

## 2. Direct versus Circumstantial Evidence

The parties here dispute whether Plaintiff has offered direct evidence, and, therefore, they dispute Plaintiff's burden of proof on summary judgment. Thus, the first issue the Court must determine is whether Plaintiff has produced direct evidence that she was denied the promotions in 2018 and 2021 because she took FMLA leave.

Plaintiff offers two statements that she contends constitute direct evidence that FMLA retaliation is the real reason for her failure to obtain the 2018 and

---

a mixed-motive claim, never invokes *Price Waterhouse/Desert Palace* (and, instead, refers to the *McDonnell Douglas/Burdine* framework), and emphasizes the distinction between direct and circumstantial evidence, the Court treats this case as asserting only single-motive FMLA retaliation claims. *Cf. Hashem-Younes v. Danou Enters. Inc.*, 311 F. App'x 777, 779 (6th Cir. 2009).

2021 promotions. First, Plaintiff testified that in March of 2018, she and Young

discussed a new employee who would be joining Plaintiff's section. Donithan

Dep. 66:17–69:3; ECF No. 55. During that conversation, Young said something

along the lines of, "let's look and see if she has an FMLA." *Id.* at 69:4–5. In

response, Plaintiff told Young that not all employees who have an FMLA

certification in place abuse it. *Id.* at 69:9–12. Young responded to Plaintiff's

statement with something like, "yes, but I've been burned too many times." *Id.* at

69:12–13.

Second, Plaintiff provided an affidavit from a former co-worker, Julia

Kempher ("Kempher"), who overheard Bower and Young discussing Plaintiff.

According to Kempher's affidavit, Bower refused to permit Plaintiff to attend "a

week or two of training" in 2015 because of Plaintiff's recent absences. Kempher

Aff. ¶ 6, ECF No. 67-4. When Young told Bower that the absences were FMLA-

related, Bower replied "No, I don't care, she needs to be here if we're going to

reward her." *Id.*

Plaintiff alleges that each statement is direct evidence of FMLA retaliation.

The Court disagrees.

"Direct evidence of discrimination 'must establish not only that the plaintiff's

employer was predisposed to discriminate on the basis of [the FMLA], but also

that the employer acted on that predisposition.'" *Curry v. Brown*, 607 F. App'x

519, 523 (6th Cir. 2015) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696,

707 (6th Cir. 2008)). "[G]eneral, vague, or ambiguous comments do not

constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty*, 544 F.3d at 708 (citations omitted).

Here, neither statement amounts to direct evidence because neither explicitly shows an improper motive for the specific, at-issue promotion denials in 2018 or 2021. Instead, even though the statements demonstrate animus toward employees who take FMLA leave, a factfinder would need to infer that the decisions not to promote Plaintiff in 2018 and 2021 were tainted by such animus. For example, Bower's statement occurred in 2015 and therefore plainly does not indicate without further inference any reason for decisions made in *2018* or *2021*. And Young's statement referred to a third party and therefore also cannot show without further inference why actions were taken with respect to *Plaintiff*. *Cf., Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir. 2014) (singular statement made not specifically about the plaintiffs, not in connection with an adverse employment action, and three years before any evaluation was not direct evidence for purposes of a § 1983 intentional discrimination claim); *Griffin v. Finkbeiner*, 689 F.3d 584 (6th Cir. 2012) ("The fact that the statements do not specifically mention Daugherty means only that they are not direct evidence of discrimination; they could still be circumstantial evidence of discrimination." (citation omitted)); *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524–25 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (statement that plaintiff was "too old" to handle an account was direct

evidence that age discrimination caused the plaintiff's removal from the account but not that age discrimination caused the plaintiff's termination).

Because these statements require an additional inference, they are unlike those the Sixth Circuit has labelled direct evidence. For example, in *Daugherty*, a supervisor explicitly told Daugherty that he would lose his job if he used his remaining FMLA leave. The plaintiff used the leave and was subsequently terminated. The Circuit unsurprisingly found the supervisor's statement was direct evidence because the threat "d[id] not indicate merely a general bias against employees taking FMLA leave, but rather establishe[d] a clear connection between Daugherty's last FMLA leave and [the supervisor's] decision to discharge Daugherty from his employment." *Daugherty*, 544 F.3d at 708; *cf. Hunter v. Valley View Local Schs.*, 579 F.3d 688, 692–93 (6th Cir. 2009) (direct evidence where the decisionmaker testified at deposition that the plaintiff's absenteeism—due, in part, to FMLA leave—was one reason she placed the plaintiff on involuntary leave).

As mentioned above, neither of these statements directly link animus against FMLA users to Plaintiff's promotion denials. Thus, the Court concludes that Plaintiff's timely claims should be analyzed under the *McDonnell Douglas/Burdine* burden-shifting framework used for cases that rely on circumstantial evidence. *Cf. Tilley v. Kalamazoo Cty. Rd. Comm'n*, 654 F. App'x 675, 683, 685 (6th Cir. 2016) (although termination letter could be read as indicating that FMLA was a reason for the plaintiff's termination, it amounted to

circumstantial evidence because there was "no direct statement" that the FMLA leave motivated termination); *Curry*, 607 F. App'x at 523 (statement that plaintiff "needed to focus on her health problems, transfer to Burlington and it would be less stressful" was not direct evidence that demotion and transfer were due to FMLA leave); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (general statements from management "about the need to lower the average of their workforce" not direct evidence that plaintiffs were fired because of age discrimination); *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 489 (6th Cir. 2000) ("Although the Big Boy sales updates, the references to 'weight limits,' and the 'Burger Boy' nicknames might raise a genuine issue of material fact as to Ludwinski's predisposition towards weight discrimination, Hein presented no evidence to connect Ludwinski's alleged prejudice against heavier individuals with his decision to fire Hein.").

### 3. *McDonnell Douglas/Burdine*

To make out a prima facie case of FMLA retaliation pursuant to *McDonnell Douglas/Burdine*, Plaintiff must prove that: "(1) she availed herself of a protected right under the FMLA . . . ; (2) she suffered an adverse employment action, and (3) . . . there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citations omitted).

With respect to the third prong, "[a]n employer's motive is an integral part of the analysis 'because retaliation claims impose liability on employers that act

against employees specifically *because* those employees invoked their FMLA rights.'" *Daugherty*, 544 F.3d 696, 707 (6th Cir. 2008) (quoting *Edgar*, 443 F.3d at 508). Evidence that "supports an inference" that the adverse action was taken because a plaintiff exercised FMLA rights is sufficient to establish a causal connection for purposes of a *prima facie* case. *Johnson*, 685 F. App'x at 384–85 (internal quotations and citation omitted). Thus, "[e]stablishing a *prima facie* case" of FMLA retaliation under *McDonnell Douglas/Burdine* "is easily met." *Johnson*, 685 F. App'x at 384–85 (internal quotations and citation omitted).

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse action. *Edgar*, 443 F.3d at 508 (citation omitted). If the defendant offers such a reason, the burden shifts back to the plaintiff to establish a genuine dispute of material fact that the legitimate, nondiscriminatory reason was pretext and that FMLA retaliation was the real reason a defendant took the adverse action. *Johnson*, 685 F. App'x 385–86.

A plaintiff can demonstrate pretext by raising a genuine dispute of material fact that either: (1) "the proffered reason[] had no basis in fact, (2) . . . the proffered reason[] did not actually motivate the employer's action, or (3) . . . it was insufficient to motivate the employer's action." *Id.* at 386 (cleaned up). "To succeed, [the plaintiff] must put forth evidence which demonstrates that the employer did not honestly believe in the proffered non-discriminatory reason for

its adverse employment action." *Id.* (internal quotation marks and citation omitted).

### a. Analysis

For each of the three remaining promotions, Defendant admits that Plaintiff availed herself of a protected right (using FMLA leave to care for her father) and suffered adverse employment actions (failing to obtain the 2018 and 2021 promotions). But, Defendant argues that Plaintiff cannot establish a *prima facie* case as to any of the three remaining promotions because there is no genuine issue of material fact as to whether there was a causal connection between her use of FMLA leave and her failure to obtain a promotion. Mot. Summ. J., ECF No. 15–17. Moreover, Defendant argues that, if Plaintiff can establish a *prima facie* case, it had a legitimate, nondiscriminatory reason for each promotion denial, which Plaintiff is unable to rebut. *Id.* at 17–20.

The Court begins by determining whether Plaintiff offered evidence sufficient for a *prima facie* case of FMLA retaliation as to each remaining promotion.

As circumstantial evidence of causation, Plaintiff offers Young's 2018 statement asking whether a different employee has ever taken FMLA leave, Bower's 2015 refusal to permit Plaintiff to participate in weeks-long training because of then-recent absences from the office, an affidavit from another employee, Michelle Kountz ("Kountz"), who alleges that Young and Bower interfered with Kountz's attempts to take FMLA leave, and an unsupported

allegation that Bower, based on anti-FMLA animus, purposefully violated the terms of a 2017 mediation out of a desire to make Plaintiff a less-credentialed candidate for future promotions. *See generally*, Resp., ECF No. 67.

To determine whether this circumstantial evidence supports an inference of causation, it is important to set forth Defendant's general procedure for filling vacancies and to consider the undisputed evidence regarding how each at-issue vacancy was filled in this case.

There is no dispute as to the general procedure for filling vacancies at Defendant. The first relevant step was for Human Resources to post the vacancy. Bower Dep. 42:5–6, ECF No. 52.[5] Once the application period closed, Human Resources forwarded all applications (with required documents) to Bower, and she or Young would screen each application and determine whether the applicant met required minimum qualifications. *Id.* at 42:6–14. If an applicant did not meet the minimum qualifications, they did not receive an interview. *Id.* at 44:4–8.

A Subject Matter Expert ("SME") then reviewed for various criteria all applications submitted by applicants who met minimum qualifications, and the SME scored each application based on those criteria. *Id.* at 43:24–44:25. The SME's scores were used to determine which applicants received an interview, and Human Resources scheduled those interviews. *Id.* at 42:14–20; 44:22–25.

---

[5] Bower's testimony as to this process is consistent with Defendant's policies during the pertinent timeframes. *See* ECF No. 61-2 at PAGEID ## 1287–1300.

Those applicants selected for an interview then interviewed before a panel of three. *See id.* at 42:20–21. Bower would sometimes serve on an interview panel; "it kind of depended on who was available and what position it was. So it was different for . . . each position and what area it was in." *Id.* at 42:20–25. Young also served on some interview panels. Young Dep. 23:24–24:8, 26:1–5, ECF No. 51.

Upon completion of the interviews, the panel would discuss the interviewees amongst themselves and submit a recommendation to Bower as to whom to hire. Bower Dep. 43:1–8, ECF No. 52. Bower was required to approve the recommendation, and her approval ultimately determined "whether or not the person [recommended by the panel] receive[d] the opportunity," because she had the power to "change the recommendation." *Id.* at 43:19–23, 57: 6–13. But Bower did not "really review anything" before signing off on a recommendation and "never went against a panel's recommendation" during her entire tenure as Chief. *Id.* at 57:6–13. Once Bower signed off on a panel's recommendation, the form was transferred to Human Resources because the Chief of Human Resources "has the final signature on the positions." *Id.* at 43:3–18; 50:15–51:24.

### 1. 2018 Promotions

For both 2018 promotions, the SME was Donelle Cummins ("Cummins"). Kimbro Decl. ¶¶ 14, 16, ECF No. 61-2 at PAGEID ## 1284–85; Rec. for Personnel Selection, ECF No. 61-3 at PAGEID # 1361; Rec. for Personnel

Selection, ECF No. 61-4 at PAGEID # 1371.  It is uncontested that, based on Cummins' scoring of the applications, Plaintiff received an interview for each 2018 position.  Donithan Dep. 125:2–127:23, ECF No. 55.

The interview panel for both positions consisted of Cummins, Mary Oakley ("Oakley"), and Bryan Byorth ("Byorth").  Kimbro Decl. ¶¶ 14, 16, ECF No. 61-2 at PAGEID ## 1284–85; Rec. for Personnel Selection, ECF No. 61-3 at PAGEID # 1361; Rec. for Personnel Selection, ECF No. 61-4 at PAGEID # 1371.  The parties did not submit declarations or deposition transcripts from Oakley or Byorth, but Cummins stated under oath that, after the interviews were conducted, the panelists discussed "the candidates' qualifications for the positions and not the candidates' FMLA status."  Cummins Decl. ¶ 10, ECF No. 61-1.  Indeed, Cummins averred that she was not even aware of Plaintiff's FMLA status at the time of the interviews and recommendations and that Plaintiff's FMLA status did not influence her recommendations for either of the 2018 promotions.  *Id.* at ¶¶ 9, 11.  The panelists ultimately recommended Lucrecia Hager ("Hager") and Christopher Dunn ("Dunn") for the two 2018 promotions.  Rec.for Personnel Selection, ECF No. 61-3 at PAGEID # 1361; Rec. for Personnel Selection, ECF No. 61-4 at PAGEID # 1371.

Bower approved the panelists' recommendations for the two 2018 promotions.  *Id.*  Again, although Bower had the authority to change the panel's recommendations, she has "never" done so.  Bower Dep. 57:3–13, ECF No. 52.

Plaintiff offers no evidence to contradict Cummins' testimony that Cummins was not aware of Plaintiff's FMLA status, that the panel did not discuss the same when reaching their consensus candidates, and that Plaintiff's FMLA status did not impact Cummins' 2018 promotion decisions. Similarly, Plaintiff offers no evidence that either Oakley or Byorth knew about, let alone considered, Plaintiff's FMLA status when determining who to recommend for the 2018 promotions. Rather, Plaintiff's causation theory is that Bower made the "final selection[] for the promotions at issue," Resp. 5, ECF No. 67, and that *Bower* was biased against Plaintiff.

But even assuming for the sake of argument that Bower harbored animus against Plaintiff for using FMLA leave, Plaintiff's causation argument lacks merit. Her argument is essentially that the panel recommended Hager and Dunn for these positions, that the panel's recommendations were not the result of FMLA retaliation, but that FMLA retaliation is the reason Bower refused to *change* the recommendations and exercise her authority to instead appoint Plaintiff to one of the open positions. This is too attenuated an argument to satisfy even the low barrier at summary judgment with respect to raising a genuine dispute of material fact on causation. It simply does not raise an inference that FMLA retaliation is *the reason* Plaintiff lost the two 2018 promotions, because no one with even arguable animus "made" the decisions in the real sense of the word. The "untainted" panel made the hiring decisions. Bower did not "dec[ide] on whom to select for promotions" as Plaintiff maintains, Resp. 9, ECF No. 67; Bower simply

failed to *override* those untainted decisions. This conclusion on causation is especially strong here, where Bower testified that she has *never* overridden a panel's recommendation.

Moreover, to the extent Plaintiff invokes temporal proximity to satisfy her *prima facie* burden, she fares no better. First, Plaintiff fails to cite any evidence concerning the specifics of when she took FMLA leave in relation to when the 2018 hiring decisions were made. She merely cites generally to the then-existing FMLA certifications (one of which post-dates the 2018 hiring decisions). Resp. 10, ECF No. 67 ("**Exhibit F** are copies of some of the FMLA certifications for her father.") (emphasis in original); Certifications, ECF No. 67-6. Thus, the Court cannot discern how much time passed between the taking of any given leave and the promotion decisions. Second, regardless of the amount of time between the two (or even considering her leave to be continuous due to the existence of an ongoing certification), Plaintiff faces the same hurdle as above. There is simply no indication anywhere in the record that anyone on the panel knew about Plaintiff's FMLA status. Logically, absent evidence of knowledge, temporal proximity cannot support an inference of causation.

At bottom, Plaintiff has offered zero evidence that a single person involved in the 2018 recommendation decisions even knew about Plaintiff's FMLA status, let alone that her FMLA status was the true reason a panelist chose not to recommend Plaintiff. Bower's inaction—her failure to override those recommendations and promote Plaintiff instead—is insufficient to support an

inference that Plaintiff lost the promotions *because of* her FMLA status; she lost the promotions because the unbiased panel recommended another candidate. Plaintiff has thus failed to clear the admittedly non-onerous bar to establishing a *prima facie* case of retaliation vis-à-vis the 2018 promotion denials, and Defendant is entitled to summary judgment on those claims.

### 2. 2021 Promotion

For the 2021 promotion, Bower was the SME. Rec. for Personnel Selection, ECF No. 61-4 at PAGEID # 1379. It is again undisputed that Plaintiff received an interview for this promotion, Donithan Dep. 141:14–143:1, ECF No. 55, but the panel ultimately recommended Charity Kisor instead. Rec. for Personnel Selection, ECF No. 61-4 at PAGEID # 1379.

The interview panelists for the 2021 promotion were Carmen Kimbro ("Kimbro"), Cummins, and John Dong ("Dong"). Again, Cummins averred that she was unaware of Plaintiff's FMLA status, that the panelists did not discuss Plaintiff's FMLA status, that Plaintiff's status did not influence Cummins' decision with respect to the 2021 promotion. Cummins Decl. ¶¶ 9–11, ECF No. 61-1. Kimbro also submitted a declaration and declared that she has "never been made aware of the interviewees' FMLA status" before an interview, "would not know if and when an applicant has FMLA leave," did not discuss any candidate's FMLA status in connection with the 2021 promotion recommendation decisions, was not influenced by Plaintiff's FMLA status when determining who to recommend for the 2021 promotion, and believed Plaintiff failed to "articulate,

during the interview, that she had the necessary experience for the position."

Kimbro Decl. ¶¶ 22–27, ECF No. 61-2.  Dong also submitted a declaration, in

which he likewise averred that he was not aware of the FMLA status of any

candidate, that the panelists did not discuss any candidate's FMLA status, that

Plaintiff's FMLA status did not influence his decision, and that he recommended

Kisor "because Kisor had recent experience and knowledge working with

offender releases, which [Plaintiff] did not have."  Dong Decl. ¶¶ 3–8, ECF No.

59-6.  Moreover, there is zero evidence that anything Bower did as SME affected

the panel's selection of a candidate for recommendation.[6]

Plaintiff again fails to rebut this evidence with any evidence that Kimbro,

Cummins, or Dong knew of Plaintiff's FMLA status when they decided to

recommend Kisor over Plaintiff (and the other five interviewees) for the 2021

promotion.  As Plaintiff cannot even show the panelists knew of her FMLA status,

she has necessarily produced no evidence that the panel's recommendation was

based on FMLA retaliation.

Instead, as above, Plaintiff's causation theory rests on the fact that Bower

approved the recommendation rather than of exercising her authority to reject the

panel's recommendation and instead appoint Plaintiff.  Although Plaintiff's

argument ultimately fails for the same reasons addressed above, the Court

---

[6] Instead, the evidence to which the Court was pointed suggests the opposite.  *See*
Bower Dep.: 44:22–25, ECF No. 52 (Q: "Are the subject matter expert scores taken into
account when selecting a candidate?"  A: "No.  No.  It's just used for interview purposes
to determine who will receive interviews.").

Case No. 2:21-cv-1136                                          Page 19 of 22

discusses Plaintiff's evidence a bit more here, where Bower was involved in the selection process as SME.

At this stage, Bower's 2015 statement is circumstantial evidence that Bower harbored an anti-FMLA animus[7] despite her testimony that she did not consider Plaintiff's FMLA status in connection with any at-issue promotion. *See* Bower Dep. 67:1–5, ECF No. 52. Similarly, another employee averred that Bower prevented her from exercising her FMLA rights. Kountz Aff., ECF No. 67-14.

This circumstantial evidence of Bower's anti-FMLA bias is ultimately a red herring, however. As noted, Bower had two roles in the 2021 promotion decision. First, as SME, she screened the applicants to determine who should receive an interview—and Plaintiff received an interview. Next, she essentially rubberstamped the panel's recommendation. Thus, just as with the 2018 promotions, even considering that Bower was the SME in 2021, she cannot reasonably be considered a "decisionmaker" for purposes of that promotion. The circumstantial evidence of Bower's anti-FMLA animus is therefore again

---

[7] Plaintiff also references a 2017 mediation between Plaintiff and Bower and argues that Bower violated the terms of that mediation. Resp. 16, ECF No. 67. She contends that "Bower refused to participate in [Plaintiff's] efforts to enhance her chances of a promotion to the Offender Release Section of the Bureau of Records Management" by "intentionally . . . not follow[ing] through on the terms of the mediation because to do so would have put her in a stronger position to obtain promotions." *Id.* at 17. Plaintiff, however, cites zero evidence that Bower violated the terms of the 2017 mediation—let alone that she did so out of an anti-FMLA animus in order to ensure that Plaintiff would be in a weak position vis-à-vis future promotions. As such, this instance is not considered as circumstantial evidence to support Plaintiff's theory that Bower's years-later decision not to override the panel's recommendation was FMLA retaliation.

insufficient to support an inference that FMLA retaliation is the reason Kisor
received the 2021 promotion instead of Plaintiff.

Additionally, Plaintiff cannot rely on temporal proximity for the same
reasons as addressed above.  If the real decisionmakers were unaware of
Plaintiff's FMLA usage, the timing between her protected activity and the adverse
action cannot indicate the two are correlated.

For these reasons, Plaintiff has also failed to establish a *prima facie* case
with respect to the 2021 promotion, and Defendant is entitled to summary
judgment on that claim as well.

## IV.     CONCLUSION

Two of Plaintiff's claims are time-barred.  As to the remaining claims,
Plaintiff has failed to offer evidence that would support an inference that Plaintiff's
FMLA usage is the reason she was denied the promotions.  At bottom, the
evidence shows that the people who decided to promote a different candidate
over Plaintiff were not even aware of Plaintiff's FMLA status or usage.  The only
evidence of anti-FMLA animus relates to Young and Bower.  But Young was not
involved in any of the timely decisions.  And, to the extent Young's bias infected
Bower, Bower likewise was not a decisionmaker in the practical sense of the
word.  Plaintiff's argument that Bower's animus made her fail to override the
panels' decisions is insufficient to raise a genuine dispute of material fact on
causation in these single-motive FMLA retaliation claims.  As such, Defendant is
entitled to summary judgment on Plaintiff's claims.  Defendant's motion, ECF No.

59, is **GRANTED**.  The Clerk shall enter judgment for Defendant and terminate

this case.

      **IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**